UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-cv-1029-M |
| | § | |
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, | § § § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are (1) a Motion for Temporary Restraining Order [Docket Entry #4], filed by Plaintiff BNSF Railway Company ("BNSF"), and (2) a Rule 12(b)(1) Motion to Dismiss [Docket Entry #11], filed by Defendant the Transportation Division of the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART-TD"). For the reasons stated, the Court finds that it has subject matter jurisdiction over this action, but declines to issue an injunction under the circumstances presented. Accordingly, both Motions are DENIED.

**Background**

This is a dispute between BNSF, an interstate railroad carrier, and SMART-TD, the collective bargaining representative for locomotive conductors and brakemen employed by BNSF. Plf. Verified Compl. at 2, ¶¶ 4, 5. According to BNSF's verified complaint, there are several collective bargaining agreements ("CBA") in place between BNSF and the employees represented by SMART-TD, including an agreement titled "Guaranteed Conductors and Brakemen's Extra Boards," which establishes how BNSF compensates conductors and brakemen

for "on-call" time (the "Agreement"). *Id*. at 3, ¶¶ 7-8. When assigned to a "guaranteed extra board," a conductor or brakeman is on-call and must be available to report for work to operate a train if he or she receives a call from a BNSF crew caller. *See id.*, ¶ 8. The employee receives a guaranteed payment for being available for work on an on-call basis regardless of whether the employee is actually called to work. A dispute exists between BNSF and SMART-TD regarding the carrier's calculation of the amount of the guaranteed payment due to BNSF employees under the Agreement. *See id.* at 4-5, ¶¶ 11-15.

On March 31, 2015, SMART-TD's General Chairman D. L. Young sent an e-mail to BNSF's General Director of Labor Relations stating that the manner in which the carrier calculated the guaranteed payment for extra boards worked in February 2015 constituted "a unilateral change in the [A]greement." *Id.* at 5, ¶ 16. BNSF alleges that SMART-TD's choice of words is industry code for action that would justify a strike. *Id.* Accordingly, BNSF requested assurances from SMART-TD that the disagreement between the parties is a "minor dispute." *Id*. BNSF alleges that, under the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et al*., it is unlawful for employees to strike over a "minor dispute." *Id.* at 7, ¶ 22. When SMART-TD declined to provide the requested assurances, BNSF filed this civil action seeking declaratory and injunctive relief. BNSF's Verified Complaint seeks a declaratory judgment that the parties' dispute is "minor" and, thus subject to mandatory, binding arbitration pursuant to Section 3 of the RLA. *Id*. at 9, ¶ 28. BNSF further asked the Court to temporarily restrain and enjoin SMART-TD and its members from engaging in a strike or any other self-help activities relating to the dispute involving BNSF's calculation of extra board guarantee payments. *Id*. at 9, ¶ 29. The Court held a telephonic hearing on BNSF's request for a temporary restraining order on April 3, 2014, and the parties agreed the carrier's request should be decided after the parties had an opportunity to

fully brief all of the relevant issues in the context of a motion to dismiss. The Court further established a protocol for the parties to advise the Court of any changed circumstances, especially any development that would moot the relief the carrier is seeking in this lawsuit. Neither party has advised the Court of any changed circumstances.

SMART-TD filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), on the ground that that this action is not ripe, and thus subject matter jurisdiction is lacking, because there has been no threatened strike activity. By its Motion, SMART-TD argues that, under the facts presented, the threat of a strike is not so real or imminent as to warrant an injunction, and any declaratory judgment claim is not ripe absent an immediate threat of a strike. BNSF responds that federal district courts have jurisdiction to classify labor disputes as "major" or "minor" under the RLA, and that declaratory and injunctive relief are appropriate under the circumstances presented. The issues have been fully briefed, and the Motion is ripe for determination.

**Legal Standards**

Ripeness is a required element of subject matter jurisdiction and, thus, is properly challenged by a Fed. R. Civ. P. 12(b)(1) motion to dismiss. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). The Fifth Circuit distinguishes between a "facial" attack on subject matter jurisdiction, which is based solely on the pleadings, and a "factual" attack on jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See, e.g., Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). Where, as here, a defendant makes a "factual" attack on a court's subject-matter jurisdiction, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Arena v. Graybar Elec.Co.*, 669 F.3d 214, 223 (5th Cir. 2012). The burden to establish subject matter jurisdiction rests on the party seeking to invoke the court's jurisdiction, rather than the party moving for dismissal. *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *In re Eckstein Marine Serv.*, 672 F.3d 310, 314 (5th Cir. 2012).

A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (citing 28 U.S.C. § 2201(a)). An actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.* Whether the particular facts are sufficiently immediate to establish an actual controversy is determined on a case-by-case basis. *Id.*

**Analysis**

BNSF argues that a justiciable controversy exists as to whether the parties' dispute over the carrier's calculations of extra board guarantee payments constitutes a major or minor dispute within the meaning of the RLA. The classification of the parties' dispute is significant, because the RLA provides two distinct procedures for resolving labor disputes depending on whether the dispute is deemed to be major or minor. *Bhd. of Ry. Carmen v. Atchison, T. & S.F.R Co.*, 894 F.2d 1463, 1466 (5th Cir. 1990). A major dispute is one that relates to the formation of a CBA seeking to govern pay rates, rules, or working conditions for a carrier's employees. *Consol. Rail Corp. v. Ry. Labor Exec. Ass'n*, 491 U.S. 299, 302 (1989). A major dispute arises when a party alleges that a CBA is not in place, or when a party seeks to change the terms of an existing agreement. *Cont'l Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391F.3d 613, 617 (5th Cir. 2004). By contrast, a minor dispute arises when a CBA is already in place and the parties' disagreement relates to the meaning or the proper application of a provision of the CBA to a specific situation. Major disputes thus seek to establish contractual rights; and minor disputes seek to enforce them. *BNSF Ry. Co. v. United Transp. Union,* 337 F. App'x 409, 411 (5th Cir. 2009) (quoting *Consol. Rail Corp.*, 491

U.S. at 302).  A minor dispute is subject to compulsory and binding arbitration before the National Railroad Adjustment Board, which has exclusive jurisdiction over minor disputes.  *Id.*

Here, a dispute exists between BNSF and SMART-TD regarding the calculation of guaranteed payments due to employees for on-call work, or extra boards.  Under the Agreement, the amount of pay an employee is entitled to receive for time spent on an extra board depends on several factors, including the particular board to which the employee is assigned and the time, during a half-month pay period, the employee is assigned to the extra board.  *See* Pl. Verified Compl., Ex. 1.  BNSF contends that if the employee is assigned to a single guaranteed extra board for the entire pay half, he or she qualifies for the full payment, or "guarantee," for that board.  *See id.,* ¶ b.  BNSF further contends that if the employee is not assigned to the same guaranteed extra board for the entire pay half, then the employee qualifies to receive 1/15 of the guarantee for each day he or she is assigned to, and available for service, on each guaranteed extra board.  *See id.*, ¶ c.  SMART-TD responds that the Agreement does not permit BNSF's method of calculating guarantees when an employee spends less than an entire pay half on the same guaranteed extra board.  According to SMART-TD, when an employee moves from one extra board to another, the employee does not revert to a daily guarantee but instead gets the full rate.  SMART-TD further objects to BNSF's using the 1/15 daily rate of guarantee during the short 13-day pay half for the second half of the month of February.

The evidence shows that representatives for BNSF and SMART-TD exchanged emails regarding their positions on the guarantee calculations, based on various provisions of the Agreement.  *Id.*  As the discussions intensified, on March 31, 2015, SMART-TD General Chairman D. L. Young sent Milton Siegele, BNSF's Assistant Vice President of Labor Relations, an email, stating that Young believed the carrier's position represented "a unilateral change" in the

Agreement. Def. App., Ex. 3 at 3. Mr. Young repeated this sentiment the next day in another email to Mr. Siegele, stating that he considered BNSF's interpretation of the Agreement a "unilateral change" and that he "therefore . . . must act accordingly." *Id.* at 2. BNSF interpreted these statements as a veiled threat that the union would strike over the guaranteed extra board payment issue. Accordingly, BNSF asked SMART-TD to confirm that the issue was a "minor dispute." *See id.*, Ex. 5 at 2. SMART-TD refused to give BNSF any such assurances. *See id.*

The record establishes that the gravamen of the parties' disagreement is a dispute over BNSF's method of calculating certain employees' extra board guarantee payments. SMART-TD has identified a particular practice by BNSF that affects the guaranteed payments to which certain employees are entitled. BNSF has justified its practice by reference to a specific provision of the Agreement. SMART-TD has responded by setting forth a different interpretation of the applicable provision of the Agreement. The parties' dispute is not hypothetical. Rather, it is a real dispute arising out of differing interpretations of the Agreement as it applies to a particular circumstance confronting the parties. The Court thus finds that the circumstances presented established an "actual controversy" at the time of suit that is ripe for adjudication under the Declaratory Judgment Act.

SMART-TD's assertion that the case is not ripe for adjudication because it has not threatened a strike or taken any steps to obtain authority to call a strike is inapposite. While the threat of legal action can establish a controversy upon which declaratory judgment can be based, the fact that the legal action is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action. *Orix Credit Alliance*, 212 F.3d at 897. In the Fifth Circuit, the issue of whether a dispute between a railroad carrier and an employee union is properly classified under the RLA as a major or minor dispute is clearly a controversy subject to resolution under the

Declaratory Judgment Act. *BNSF Ry. Co. v. Bhd. of Locomotive Engineers and Trainmen*, 595 F. Supp. 2d 722, 734 (N.D. Tex.), *aff'd*, 337 F. App'x 409 (2009). Therefore, SMART-TD's Rule 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

Even though the Court finds that BNSF's declaratory judgment claim is justiciable, it declines to grant injunctive relief. The record does not establish an immediate threat of a strike. Instead, the undisputed evidence shows that Mr. Young does not have the authority to call for a strike, nor has he taken any of the steps required by the SMART-TD Constitution to obtain strike authority. Def. App., Ex. at 2, ¶¶ 3-6. BNSF contends that it has a concern that SMART-TD will engage in an illegal strike because, about a year ago, Mr. Young twice advised BNSF representatives that the carrier's position on the guarantee payment issue was a "unilateral change" to the Agreement, and he promised to "act accordingly." Mr. Young also refused to confirm whether SMART-TD viewed the issue as a minor dispute under the RLA. BNSF's mere concerns over SMART-TD's use of the words "unilateral change" do not warrant injunctive relief, especially in the absence of any other evidence that the union is preparing for a strike. SMART-TD's conduct since the inception of this litigation has not indicated an intention to strike. To the contrary, SMART-TD has engaged the on-property dispute resolution process. And, while it has not given BNSF assurances that it agrees the guarantee payment dispute to be a minor dispute, SMART-TD has not made any representation to BNSF, or this Court, that it believes the issue rises to the level of a major dispute. The totality of the circumstances presented in this case indicates that SMART-TD's statements regarding "unilateral change" were not the equivalent of an imminent threat to strike. *See N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, ALF-CIO*, 2005WL 646350, at * (S.D.N.Y. Mar. 21, 2005) (noting that a union's self-help threats must be viewed in the context of collective bargaining, "which is a robust and dynamic negotiation process where

leverage is sought through posturing"). BNSF's Motion for Temporary Restraining Order is therefore DENIED.

## CONCLUSION

SMART-TD's Rule 12(b)(1) Motion [Docket Entry #11] and BNSF's First Motion for Temporary Restraining Order [Docket Entry #4] are DENIED.

**SO ORDERED**.

March 30, 2016.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**